# Master Affidavit of Special Agent Michael T. Baumgardner in support of Arrest Warrants and Search Warrants

## INTRODUCTION

I, Michael T. Baumgardner, having been duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice.

2. I have been employed as a Special Agent since March, 2005. As a Special Agent I have been trained in various aspects of law enforcement, including investigations of narcotics offenses. During my employment with the FBI, I have participated in several investigations involving narcotics distribution organizations. In the course of those investigations, I have conducted consensually recorded telephone calls, consensually recorded meetings, supervised the controlled purchase of illegal narcotics, executed search and arrest warrants, conducted surveillance, made arrests and secured other relevant information using other investigative techniques.

3. This affidavit is being submitted in support of applications for criminal complaints, and search warrants stemming from an investigation regarding violations of federal drug trafficking laws by Rafael Figueroa; Joel Yournet-Martinez; Wilma Garcia; Joendy Santiago-Luciano, also known as (aka) "Angel", aka "Gorge Rivera", (hereinafter, "the subjects")

and others as known and unknown.

4. This case is being investigated by the FBI; the Pennsylvania Office of Attorney General (PAOAG), Bureau of Narcotics Investigations and Drug Control (BNIDC); and the Scranton Police Department (SPD).

5. I have personally participated in this investigation of the target subjects and offenses referred to herein, and from my personal participation in this investigation and from my discussions with other Agents and officers who are assisting me in this investigation, I am familiar with the facts and circumstances of this investigation. Based upon this knowledge, I allege facts contained in the paragraphs below demonstrate there is probable cause to believe that the subjects and others known and unknown, have committed, are committing, and will continue to commit violations of the Controlled Substances Act, among other offenses. It is anticipated that the execution of search warrants will reveal evidence of the following offenses under investigation: (a) Distribution of Controlled Substances in Violation of Title 21, United States Code (USC), Section 841; (b) Use of Communications Facility to Facilitate Such Offenses, in violation of Title 21, USC, Section 843 (b); (c) Conspiracy to Distribute Controlled Substances, in violation of Title 21, USC, Section 846; (d) Criminal

Forfeiture of Property Used in Connection with Drug Trafficking, in violation of Title 21, USC, Section 853; (e) Money Laundering, in violation of Title 18, USC, Sections 1956 and/or 1957; and (f) Aiding and Abetting the Offenses Described in (a) through (e), in violation of Title 18, USC, Section 2.

6. The statements contained in this affidavit are based upon information provided by my own observations and by the observations of other Agents and officers participating in this investigation; information obtained from confidential informants (CIs)/cooperating witnesses (CWs); information derived from police reports and records, motor vehicle reports, telephone company records and consensual recordings; and my training as a Special Agent of the FBI. I have not included each and every fact known to me concerning this investigation, I have set forth only those facts that I believe are necessary to establish probable cause for the charges against the individuals listed in the Criminal Complaints and to search the properties listed on the Search Warrant Applications.

**PROBABLE CAUSE**

7. On August 22, 2005, an individual hereafter referred to as Cooperating Witness #1 (CW#1) was interviewed by your Affiant. In statements made against his/her own penal

3

interest, CW#1 provided information on a heroin distribution network that involved, Rafael Figueroa, Joel Yournet-Martinez, Wilma Garcia, and Joendy Santiago-Luciano, also known as (aka) "Angel", aka "George Rivera". CW#1 stated that Figueroa was selling 600-800 bags of heroin per week in addition to crack cocaine. CW#1 stated that Yournet-Martinez and his girlfriend Garcia were selling 600-800 bags of heroin per week. Figueroa, Yournet-Martinez, and Garcia all used Santiago-Luciano as a distributor. CW#1 stated that this distribution network also involved a number of other Hispanic males and prostitutes in the area of Scranton, Pennsylvania.

8. CW #1 has a criminal history regarding controlled substance violations. CW #1 has been a CW for the BNIDC and SPD for over seven months and information provided by CW#1 has been found to be accurate and reliable. CW #1 participated in 6 controlled purchases of drugs for the PAOAG, SPD, and FBI. CW #1's information has been corroborated in the following manner: 1) Through other witness interviews; 2) Through controlled purchases of drugs; 3) Through surveillance; 4) Through consensual recordings; and 5) Through record checks. In statements against his/her penal interests, CW #1 outlined his/her past involvement concerning the distribution of illegal narcotics.

9. On August 26, 2005, CW#1 participated in a consensually recorded meeting with Joendy Santiago-Luciano. During this meeting Santiago-Luciano discussed purchasing heroin from and selling for Wilma Garcia and Joel Yournet-Martinez.

10. On August 26, 2005, CW#1 participated in a consensually recorded meeting with Rafael Figueroa. During this meeting Figueroa discussed providing heroin to Santiago-Luciano for sale through a consignment arrangement.

11. On August 30, 2005, an individual hereafter referred to as CW#2 was searched for contraband and currency with negative results and issued $200 in identifiable currency for the purpose of purchasing heroin. At approximately 1:00 p.m. a body recorder was activated and placed on the person of CW#2. Surveillance was then established in the vicinity of 924 Cedar Avenue, Scranton, Pennsylvania. CW#2 was then transported to the vicinity of 924 Cedar Avenue, Scranton, Pennsylvania in the vehicle of Under Cover Agent #1 (UCA#1). Surveillance observed CW#2 approach 924 Cedar Avenue, Scranton Pennsylvania and meet with an unknown Hispanic male on a bicycle. CW#2 and the Hispanic male then traveled to 305 Willow Street, Scranton, Pennsylvania. Upon reaching 305 Willow Street, Scranton, Pennsylvania CW#2 was observed meeting with Joel Yournet-Martinez and Wilma Garcia. CW#2 was observed meeting with Wilma Garcia inside of a Chevrolet

with Pennsylvania registration DDY-9778. After this meeting CW#2 returned to the vehicle of UCA#1 and turned over 10 bags of suspected heroin stamped with the logo "Grim Reaper". CW#2 was searched for contraband and currency with negative results. CW#2 stated that he provided the $200 in identifiable currency to Joel Yournet-Martinez. Wilma Garcia and Joel Yournet-Martinez then walked inside of the residence, Wilma Garcia then exited the residence, directed CW#2 to get into the Chevrolet with Pennsylvania registration DDY-9778 and provided CW#2 with the heroin. The bags turned over by CW#2 field tested positive for heroin. A subsequent laboratory test revealed that these bags contained .36 grams of heroin.

12. CW#2 has been a CW for the FBI for over 2 1/2 years. CW#2 has made numerous controlled purchases of drugs for the FBI. CW #2's information has been found to be accurate and reliable. CW#2's information has been corroborated in the following manner: 1) Through other witness interviews; 2) Through controlled purchases of drugs as detailed in this affidavit; 3) Through surveillance; 4) Through consensual recordings; and 5) Through record checks.

13. On September 1, 2005, CW#2 was searched for contraband and currency with negative results and provided with $200 in identifiable currency for the purpose of purchasing heroin.

A body recorder was then activated and placed on the person of CW#2. Surveillance was established in the vicinity of 924 Cedar Avenue, Scranton, Pennsylvania. CW#2 was transported to the vicinity of 924 Cedar Avenue, Scranton, Pennsylvania in the vehicle of UCA#2. CW#2 arrived at 924 Cedar Avenue, Scranton, Pennsylvania at approximately 1:33 p.m. CW#2 met with several Hispanic males, then walked to a pay telephone with Santiago-Luciano where Santiago-Luciano made two telephone calls the first at approximately 1:40 p.m. and the second at approximately 1:59 p.m. At approximately 2:40 p.m. unidentified Hispanic male #1 left 924 Cedar Avenue, Scranton, Pennsylvania and was observed meeting with unidentified Hispanic male #2. Unidentified Hispanic male #1 was then observed meeting with CW#2. After this meeting CW#2 returned to the vehicle of UCA#2 and turned over 10 bags of suspected heroin with the logo "T-Mobile 12345678910". CW#2 was searched for contraband and currency with negative results. The bags turned over by CW#2 field tested positive for heroin. A subsequent laboratory test revealed that these bags contained .53 grams of heroin. CW#2 stated that Santiago-Luciano directed unidentified Hispanic male #1 to meet with unidentified Hispanic male #2. When unidentified Hispanic male #1 returned from the meeting he delivered several bundles of

heroin to waiting customers including CW#2.

14. On September 14, 2005, CW#1 was searched for contraband and currency with negative results and issued $200 in identifiable currency for the purpose of purchasing heroin. At approximately 1:00 p.m., surveillance observed an unknown black male and Wilma Garcia arrive at 924 Cedar Avenue, Scranton, Pennsylvania. Wilma Garcia entered this residence while the black male remained outside. CW#1 was then transported to the vicinity of 924 Cedar Avenue, Scranton, Pennsylvania in the vehicle of UCA #1. CW#1 approached this residence under the surveillance of law enforcement. At approximately 1:21 p.m, CW#1 arrived at this residence, had a brief conversation with Santiago-Luciano and the black male, then entered the residence. At approximately 1:24 p.m. surveillance observed CW#1 exit the residence and return directly to the vehicle of UCA #1. CW#1 handed UCA#1 10 bags of a suspected heroin with the logo "High". CW#1 was then searched for contraband and currency with negative results. CW#1 stated that he/she arrived at 924 Cedar Avenue, Scranton, Pennsylvania and spoke to the black male and Santiago-Luciano about purchasing one bundle (10 Bags) of heroin. CW#1, Santiago-Luciano, and the black male then went inside of the residence. While inside the residence, CW#1 handed the black male $200. The black male then

directed Santiago-Luciano to count out and hand one bundle (10 Bags) of heroin to CW#1. These bags field tested positive for heroin. A subsequent laboratory test revealed that these bags contained .08 grams of heroin.

15. On November 16, 2005 CW#1 was searched for contraband and currency with negative results and issued $300 of identifiable currency for the purpose of purchasing heroin. Surveillance was then established in the vicinity of 563 Mary Street, Scranton, Pennsylvania. At approximately 1:56 p.m. CW#1 placed a consensually recorded telephone call to Rafael Figueroa at (570) 241-6967. During this telephone call, Rafael Figueroa directed CW#1 to meet at Figueroa's residence, 563 Mary Street, Scranton, Pennsylvania. At approximately 2:00 p.m., a body recorder was activated and placed on the person of CW#1. CW#1 was then transported to the vicinity of 563 Mary Street, Scranton, Pennsylvania in the vehicle of UCA#1. At approximately 2:16 p.m., CW#1 met Figueroa and entered 563 Mary Street, Scranton, Pennsylvania. Cynthia Borrero was also observed in the doorway of this residence looking at a cellular telephone, held by Figueroa, in the presence of CW#1, while the transaction was taking place. At approximately 2:26 p.m. CW#1 and Figueroa exited the residence, and Figueroa retrieved a black bag from the trunk of a silver/grey

colored Plymouth automobile, bearing Pennsylvania registration EWY-6978. This vehicle also has a small discolored dent above the trunk mounted taillight. A check of Pennsylvania Motor Vehicle registrations revealed that EWY-6978 was registered to a Saturn automobile, and had been illegally displayed on the Plymouth automobile. After retrieving the black bag, Figueroa and CW#1 returned inside of the residence. At approximately 2:31 p.m. CW#1 exited the residence, returned to the vehicle of UCA#1, and turned over 20 bags of a substance that field tested positive for heroin with the logo "UMD". A subsequent lab test revealed that these bags contained .96 grams of heroin. CW#1 was then searched for contraband or currency with negative results. CW#1 stated that he/she had purchased these bags from Figureroa for the sum of $300. CW#1 also stated that these bags of heroin had come from the black bag that was inside of the silver colored Plymouth. CW#1 also observed an additional quantity of heroin inside of this black bag, a silver colored .380 Caliber semiautomatic handgun with black handles, and a .22 Caliber revolver with a 6" barrel bearing the serial number AM21450.

16. On December 7, 2005, CW#2 was searched for contraband and currency with negative results and issued $200 of identifiable currency for the purpose of purchasing heroin.

At approximately 1:48 p.m., CW#2 placed a consensually recorded telephone call to Wilma Garcia at (570) 351-4184. During this telephone call, CW#2 made arrangements to purchase heroin from Wilma Garcia in the Price Rite Shopping Center parking lot, on Luzerne Street, Scranton, Pennsylvania. Following this telephone call, surveillance was established on this parking lot, and at approximately 1:54 p.m., a body recorder was activated and placed on the person of CW#2. CW#2 was driven to the Price Right Shopping center in the vehicle of UCA#1. After a brief wait, Wilma Garcia arrived at the Price Right Shopping center parking lot in a Green Honda bearing Pennsylvania Registration GGB1823. After arriving in the parking lot, a white male entered Garcia's vehicle, met with her briefly, and exited the vehicle. Garcia then met with CW#2 inside of her vehicle. CW#2 met with Garcia briefly then exited the vehicle, and returned directly to the vehicle driven by UCA #1. CW#2 turned over 10 bags of a substance that field tested positive for heroin with the logo "Two for the money" to UCA #1, and stated that he/she had purchased them from Wilma Garcia with the $200 in identifiable currency. CW#2 was then searched for contraband or currency with negative results. After meeting with CW#2 a hispanic male met with Wilma Garcia inside of her vehicle. This male met with

Garcia briefly then exited the vehicle. Based on your Affiant's observations, training, experience, and the observations, training, and experience of other law enforcement officers it appeared that all three of Garcia's meetings were drug transactions where she sold a quantity of illegal narcotics to a waiting customer. Following this third meeting, Garcia was observed by surveillance returning to her residence, 1501 Townhouse Boulevard, Scranton, Pennsylvania. Prior to this date, Garcia moved out of her previous residence, 305 Willow Street, Scranton, Pennsylvania, where the drug transaction detailed earlier in this Affidavit took place. Garcia's permanent residence is now 1501 Townhouse Boulevard, Scranton, Pennsylvania

17. On January 18, 2006, Sgt Dan Duffy and Cpl Dave Mitchell conducted a routine traffic stop on a 1998 Plymouth Breeze sedan, Vehicle Identification Number (VIN) 1P3EJ46C9WN144900, bearing Pennsylvania Registration for a 1990 Plymouth Coupe, driven by Jamie Lee Townend, with Cynthia Borrero as a passenger. During this traffic stop law enforcement officers seized 29 plastic twist bags of crack cocaine, three small ziplock bags of cocaine, one folded dollar bill containing cocaine, and forty bags of heroin from the person of Cynthia Borrero. Cynthia Borrero lives at 563 Mary Street, Scranton, Pennsylvania, and is

married to Rafael Figueroa.

18. On February 23, 2006 your Affiant interviewed CW#2. CW#2 stated that Wilma Garcia was keeping a quantity of heroin inside of her vehicle and using the telephone numbers (570) 351-4601 and (570) 351-4184 to sell heroin. The telephone number (570) 351-4184 is sometimes answered by an unknown black male. CW#2 also stated that Rafael Figueroa was selling heroin and crack cocaine using the telephone numbers (570) 780-6814 and (570) 604-3783.

19. On March 3, 2006 CW#2 was searched for contraband and currency with negative results and issued $250 of identifiable currency for the purpose of purchasing heroin and crack cocaine. Surveillance was established in the vicinity of 563 Mary Street, Scranton, Pennsylvania. At approximately 12:26 p.m. a body recorder was activated and placed on the person of CW#2. CW#2 was then transported to the vicinity of 563 Mary Street, Scranton, Pennyslvania in the vehicle of UCA#1. CW#1 knocked at the front door of this residence and was then observed walking around the residence and entering a rear door. CW#1 exited the residence, walked directly to the vehicle of UCA#1 and turned over 5 bags of a substance that field tested positive for heroin, and a substance, with the appearance of crack cocaine, wrapped in a plastic, that field tested positive

for cocaine. CW#2 stated that he/she purchased this heroin and crack cocaine from Rafael Figueroa for the sum of $250.

20. On March 3, 2006 CW#2 was searched for contraband and currency with negative results, and issued $250 of identifiable currency for the purpose of purchasing heroin. At approximately 1:02 p.m. CW#2 placed a consensually recorded telephone call to Wilma Garcia at (570) 351-4184. During this telephone conversation, Garcia directed CW#2 to meet her at the Dominoes Pizza parking lot, 1316 N Main Avenue, Scranton, Pennsylvania for the purpose of purchasing heroin. Surveillance was then established in the vicinity of the Dominoes Pizza parking lot. At approximately 1:08 p.m. a body recorder was activated and placed on the person of CW#2. CW#2 was then transported to the vicinity of the Dominoes Pizza parking lot in the vehicle of UCA#1. At approximately 1:19 p.m. Garcia arrived at the intersection of Providence Road and Philo Street (across from the Dominoes Pizza parking lot), in a Green Honda bearing Pennsylvania registration GGB-1823. At approximately 1:19 p.m. CW#2 entered this vehicle and met with Garcia. CW#2 exited Garcia's vehicle at approximately 1:21 p.m., walked directly to the vehicle of UCA#1, and turned over 13 bags of a substance that field tested positive for heroin with the logo "Kiss of Death". CW#2 was searched for currency and

contraband with negative results. CW#2 stated that he/she purchased these bags from Garcia with the $250, paying $200 for the a bundle of 10 bags and $50 for the three loose bags. After this drug transaction Garcia was observed returning directly to 1510 Townhouse Boulevard, Scranton, Pennsylvania, exiting her vehicle, and entering the residence while carrying a small package in her hand.

21. Based upon your affiant's training and in consultation with the other Agents participating in this investigation, he knows that:

   a. Drug dealers often place assets in names other than their own to avoid detection of these assets by government and law enforcement;

   b. Even though these assets are placed in the names of other person or entities, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

   c. Drug traffickers must maintain and have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business;

   d. Drug traffickers maintain in their residence and/or business establishments computerized or written books,

    records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, and the outstanding debts and collections from controlled substances that have been distributed;

e. Drug traffickers commonly provide narcotics on consignment sale to their customers who subsequently pay for the drugs after reselling the drugs. Therefore, the above mentioned books, records, receipts, notes, ledgers, etc., will be secured by the drug traffickers within their residence and/or their business for their ready access to them for the purpose of determining drug debts and collecting monies derived from the sale of drugs;

f. Drug traffickers commonly maintain photographs/video tapes of their associates, oftentimes, in the presence of controlled substances, currency, firearms, and their assets.

g. Drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses, and telephone numbers of drug associates within their residences and/or place of business, their vehicles, or

       the curtilage of their residence or business for ready access and to hide them from law enforcement agencies;

h. Drug traffickers commonly maintain records reflecting names, nicknames, addresses, and telephone numbers of both their current and past drug associates; drug traffickers frequently maintain these records on a computer and/or computer media;

i. Drug traffickers will commonly conceal within their vehicle, residence, or business, or within the curtilage of their residence or business caches of drugs, large amounts of currency, firearms, financial instruments, precious metals and precious gemstones, jewelry, electronic equipment, and other items of value and/or proceeds of drug transactions and evidence of financial transactions related to obtaining, transferring, secreting, or spending.

j. Drug traffickers will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services.

k. Drug traffickers often use communication devices such as pagers, cellular telephones and telephones in furtherance of their narcotics distribution. Codes to depict quantities, locations and individuals are also often used in conjunction with these communications.

## CONCLUSION

22. Your Affiant asserts, given the following, that there is probable cause to believe that the subjects, Rafael Figueroa; and Wilma Garcia; have committed violations of the Controlled Substance Act, specifically violations of Title 21, United States Code, Section 841(a)(1). Your Affiant further asserts that there is probable cause to believe that within the following: (1) 563 Mary Street, Scranton, Pennsylvania, (2) Silver/Grey colored Plymouth vehicle operated by Cynthia Borrero and Rafael Figueroa with a small discolored dent above the trunk mounted taillight, (3) 1501 Townhouse Boulevard, Scranton, Pennsylvania, and (4) Dark Green Honda bearing Pennsylvania Registration GGB 1823, there may exist fruits, instrumentalities, and proceeds of violations of the Controlled Substance Act as detailed in Attachment B of the Search Warrant Application.

_____
Michael T. Baumgardner
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before
me this 14 day of March 2006,
at Scranton, Pennsylvania.

_____
THOMAS M. BLEWITT
United States Magistrate Judge