1

                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,     )
                              )
           Plaintiff          )
                              )
      vs                      )    06-CR-163
                              )
                              )
RAFAEL FIGUEROA,              )
                              )
           Defendant          )



     BEFORE:    HONORABLE THOMAS I. VANASKIE
                United States District Judge
                for the Middle District of Pennsylvania

                Sentencing

                Tuesday, May 15, 2007
                Scranton, Pennsylvania


A P P E A R A N C E S:

For The Government:        JOHN C. GURGANUS, ESQ.
                           Assistant United States Attorney
                           Room 309, Federal Building
                           235 N. Washington Avenue
                           Scranton, Pennsylvania  18503



For The Defendant:         LEO A. LATELLA, ESQ.
                           Federal Public Defender's Office
                           116 N. Washington Avenue
                           Scranton, Pennsylvania  18503




        KRISTIN L. YEAGER, RMR, CRR - COMPUTER TRANSCRIPT

1     (At this time the interpreter was sworn.)
2     THE COURT: All right, we're here for sentencing in the
3  matter of United States of America v. Rafael Figueroa. Before
4  we proceed or before we talk about the guidelines and things
5  like that and the Pre-sentence Investigation Report, I'm having
6  a little trouble understanding the context in which this
7  sentencing is going to be imposed.
8     Specifically, we accepted a plea, pursuant to a Rule
9  11(C)1(c) plea agreement that called for a certain disposition,
10 depending upon the facts as reported and the facts as
11 established, and I have not yet determined whether to accept
12 the plea agreement. The plea agreement called for, either, a
13 prison term of five years, if Mr. Figueroa was not a career
14 offender, or 151 months, if he was a career offender. He
15 qualifies as a career offender.
16    The Government has filed a downward departure motion, now,
17 that recommends a sentence of 100 months, and what does that
18 mean, with respect to the Rule 11(C)1(c) plea agreement? Is it
19 no longer a Rule 11(C)1(c) plea agreement?
20    MR. GURGANUS: I believe that's correct, Your Honor. We had
21 originally had a plea agreement where we would recommend 151
22 months. Even under the terms of that plea agreement, we would
23 have had to file, in my view, a 5(k)1 motion to bring it down
24 there. In all candor, this Defendant qualifies for such a
25 motion.

1    When we looked at this case, initially, there was some
2 suggestion that he might be a career offender, but counsel for
3 the Defendant and the Defendant were asserting was not, as it
4 shakes out, he is a career offender. I believe that they're
5 withdrawing their objection, but we're also recognizing, Your
6 Honor, the manner in which he became a career offender, and as
7 the Court pointed out during our Pre-sentence hearing, there
8 has been some differences of opinion, perhaps, by some judges
9 across the country.
10    I looked at, also, what he pled to, the fact that it was a
11 B felony rather than a C felony. I looked as to if I had known
12 that he was, in fact, a career offender, I have insisted on a B
13 felony rather than the C felony. In reviewing all of that and
14 reviewing what I thought his cooperation was, what I believe
15 was worth one-third departure request, had I made a plea to a C
16 felony, I came up with what I felt was a fair and reasonable
17 sentence of 100 months that I determined that I would recommend
18 to the Court. And it was the subject of some negotiation with
19 counsel for the Defendant. Mr. Figueroa was also advised of the
20 negotiating process.
21    So the bottom line is that it was agreed that both parties
22 would recommend to the Court 100 months here today, that it was
23 further -- that rather than file a 5(k) to 151 months, I
24 determined that for all of these reasons that I have just
25 stated that the 100 months would be reasonable, which I stated,

1  and I would go beyond that which would be a benefit to the
2  Defendant. I don't believe, at this point, that it's binding on
3  the Court under the situation. Mr. Figueroa, if he receives
4  such a sentence, I believe he is not intending to appeal the
5  sentence, and he's going to concede here today that it would be
6  a reasonable sentence. So that's where we stand. We really
7  don't go beyond that, and maybe Mr. Latella can flesh out what
8  his thoughts are.
9        MR. LATELLA: Your Honor, I'm in agreement with everything
10 Mr. Gurganus had said. When we were negotiating this plea
11 agreement, quite frankly, looking at his criminal record, at
12 the time, it appeared that he was not a career offender because
13 we simply didn't have the Puerto Rican records, and I wasn't
14 aware that there were convictions in Puerto Rico, and also I
15 inherited this case when one of the other assistants had left
16 our office.
17       At that time, when Mr. Gurganus and I negotiated the plea
18 agreement, we felt that, based on his cooperation, that 60
19 months would have been a fair sentence, if he was not a career
20 offender. However, I think that the Government's concern was
21 there may have been another drug trafficking offense or
22 something of that nature out there, in which case, he would be
23 a career offender, and that the more appropriate sentence would
24 be 151, which would have been below the career offender
25 guideline, which I believe would have been 188.

1    But when we got these records from Puerto Rico and we saw,
2 basically, it was a walk-away from a rehabilitation center,
3 from an intensive treatment center, and the Government is being
4 very, very reasonable in saying that, well, although, he
5 technically qualifies -- and Your Honor, in reviewing the Third
6 Circuit case law, I would have to agree that, at this time, he
7 would technically qualify as a career offender. Of
8 course -- and then that's where we came up with the subsequent
9 agreement as to 100 months.
10    As a further concession, Your Honor, in the plea agreement,
11 there's an appellate waiver, but we made an exception in the
12 plea agreement that we would be able to appeal a determination
13 that he was a career offender. So it was a -- as a further
14 concession, we're going to give that up and make this a
15 complete appellate waiver. I sent Mr. Figueroa the Third
16 Circuit case law, we discussed it, we're in agreement at this
17 time that he definitely qualifies as a career offender. If we
18 hadn't reached this agreement, then, I was asking Mr. Gurganus
19 if I could make a Motion for a Downward Departure, based on
20 overrepresentation of criminal history, because, in our
21 opinion, that second predicate, although, technically
22 qualifying, certainly, isn't as significant as some of the
23 other predicates which we believe the career offender guideline
24 is intended towards.
25    But in summation, if the Court would accept our joint

1  agreement of 100 months, we all feel that that would be a fair
2  and reasonable solution to this case.
3      THE COURT: All right. I guess the question I have is
4  whether this is still, in effect, a Rule 11(C)1(c) plea
5  agreement. You know, as the facts have come out, now, you're
6  both agreeing, and I have to ask Mr. Figueroa, are you saying
7  that 100 months should be the sentence?
8      MR. GURGANUS: Your Honor, we are amending, then, the plea
9  agreement, and we are asking the Court to honor the plea
10 agreement that has now been amended and reached by the parties
11 and impose the sentence of 100 months imprisonment with the
12 other requirements that were agreed upon, the supervised
13 release term, and we just ask the Court to honor that request.
14     If the Court was to refuse or wish to go lower or higher,
15 the parties would then -- each party would have an opportunity
16 to withdraw from it. So you can either accept that amended
17 agreement or allow us to then step back and make a
18 determination whether we wish to proceed anew.
19     THE COURT: Okay. Let me ask Mr. Figueroa a couple of
20 questions.
21     First, do you understand that what is being requested of me
22 is to accept your plea agreement, as if it called for an
23 agreement between you and the Government for a prison term of
24 100 months?
25     THE INTERPRETER: Yes.

7

1     THE COURT: Do you also understand that, by this agreement,
2  you are waiving any rights to appeal the sentence or your
3  guilty plea?
4     THE INTERPRETER: Yes.
5     THE COURT: Has counsel, Mr. Latella, explained the
6  consequences of giving up your appeal rights?
7     THE INTERPRETER: Yes.
8     THE COURT: Do you understand, then, that the final word --
9  if I accept the plea agreement, I'll impose the prison term of
10 100 months, plus the other terms of supervised release called
11 for by that plea agreement, and that will be the end of this
12 matter?
13    THE INTERPRETER: Yes.
14    THE COURT: Do you understand you won't be able to challenge
15 this in any other Court in any other manner?
16    THE INTERPRETER: Yes.
17    THE COURT: Are you willing to do that?
18    THE INTERPRETER: Yes.
19    THE COURT: Mr. Latella.
20    MR. LATELLA: I suppose, to clarify, Your Honor, what we are
21 requesting is that we verbally amend the plea agreement,
22 specifically, Paragraph 8 on Page 5, that the appropriate
23 sentence recommendation is 100 months and, again, amending
24 paragraph 30, beginning on Page 14, carrying over to Page 15,
25 but, specifically, the handwritten portion where it says, The

1  Defendant does, however, retain the right to appeal a
2  determination that he's a career offender, should that
3  determination be made by the Court, and we're requesting that
4  our amendment be that we would strike out that handwritten
5  portion that we just read. Those would be the two amendments.
6       MR. GURGANUS: That's acceptable.
7       THE COURT: The amendments are accepted.
8       All right, then, at this point, first, for the record, I
9  have reviewed the Pre-sentence Investigation Report, I will ask
10 Mr. Figueroa, has the Pre-sentence Investigation Report been
11 presented to you in a way that you can understand it?
12      THE INTERPRETER: Yes.
13      THE COURT: Mr. Latella, have you explained the Pre-sentence
14 Report to your client?
15      MR. LATELLA: Yes, Your Honor.
16      THE COURT: Are there any objections to the Pre-sentence
17 Report?
18      MR. LATELLA: There are no objections, Your Honor, and I
19 think I had done so before, but, again, the objection that we
20 made regarding the career offender enhancement, we are
21 withdrawing.
22      THE COURT: All right, very well. Does the Government have
23 any objections?
24      MR. GURGANUS: No objections, Your Honor.
25      THE COURT: All right, I will adopt the factual findings in

1 the Pre-sentence Report and its application of the law to those
2 facts. The Government has filed a Motion for Downward
3 Departure, which I will grant, and I will then ask Mr. Latella
4 to address the question of whether I should accept this amended
5 Rule 11(C)1(c) plea agreement and impose a prison term of 100
6 months and supervised release period of four years.
7     MR. LATELLA: Your Honor, given the facts of this case and
8 the circumstances of Mr. Figueroa, he's a young man, he does
9 have a troubled history. I think the majority of his problems
10 stem from his heroin use. I don't think there's ever been a
11 doubt that he has been a severe heroin addict. He has been at
12 the Lackawanna County Prison, now, for quite some time, since
13 March of '06. And, of course, there, having withdrawn from his
14 heroin addiction and working on his addiction problem, I
15 believe that with his sobriety, we won't see these kinds of
16 problems with Mr. Figueroa in the future.
17     Unfortunately, he, after this, he has -- his past is not
18 yet behind him, because when he finishes this Federal sentence,
19 he has charges in Puerto Rico that he has to face. So he's a
20 young man, 100 months is a long time. He will be in jail even
21 longer than that after he finishes his Federal time. He did
22 cooperate, I think, from very early on, he began to cooperate
23 with the Government, so we would think, Your Honor, under these
24 circumstances, 100 months certainly is reasonable.
25     THE COURT: All right. Mr. Figueroa, you have the right to

1  say to me whatever you'd like to say.
2      THE INTERPRETER: I want to know -- I just want to know if
3  you can recommend the program that I can change my life, I
4  wanted to change my life, because I have five kids, and they
5  are waiting for me. And I will thank you for what you can do if
6  you can help me. If you can, maybe, place me in someplace close
7  to New York, I have two kids over there. In Connecticut, maybe.
8      THE COURT: All right. I can make recommendations along
9  those lines.
10     THE INTERPRETER: Thank you very much.
11     MR. GURGANUS: I filed a Motion for Downward Departure, and
12 we do believe that this Defendant's cooperation should result
13 in a lower sentence than what's called for by the guidelines,
14 and we think that the recommended 100 months meets the
15 objectives of sentencing. I think it sends a message to the
16 community, I think that it appropriately punishes this
17 Defendant for his conduct.
18     Like I said, given other plea agreements that we have
19 negotiated in this type cooperation, this seems to be
20 consistent with what we can do with similarly-situated
21 Defendants with a similar criminal past. So we recommend the
22 Court to accept the plea agreement.
23     THE COURT: I will accept the plea agreement and impose the
24 prison term to which the parties have agreed of 100 months. I
25 have done so, after taking into consideration factors that I

1  believe are somewhat extenuating in this matter, with respect
2  to the nature of the escape offense, and looking at the
3  seriousness of the crime and the seriousness of the record that
4  you have, I believe a lengthy sentence is appropriate in this
5  matter, and 100 months is a lengthy sentence.
6      I believe it does serve the purposes of sentencing that are
7  reflected in 18 United States Code Section 3553(a), and it is a
8  reasonable sentence under all the circumstances. It punishes
9  the Defendant for the seriousness of this offense, distribution
10 of heroin is an extremely serious matter. He knows better than
11 anybody else how addictive it is. And by participation in this
12 distribution, you put other people in the same position that
13 you are in here today. You've expressed a desire to want to
14 change your life, and, hopefully, this period of incarceration,
15 you will be able to participate in programs that gives you the
16 opportunity to do that.
17      I will recommend that you be placed in the Federal Bureau
18 of Prisons 500-hour Drug Treatment Program, and I will
19 recommend that you be incarcerated in a Federal Correctional
20 Institution in the vicinity of New York City, whether that be
21 in Connecticut or somewhere else in that vicinity. It is only a
22 recommendation, Mr. Figueroa. I have no authority to tell the
23 Bureau of Prisons where to imprison you. They only make that
24 decision. But they often do honor my recommendations.
25      I will also impose the period of supervised release that

was called for by the plea agreement.

Now, before I formally impose sentence, is there anything else?

MR. GURGANUS: No, Your Honor.

THE INTERPRETER: I just want to say thank you very much, I am really grateful, and I thank you. In the future, I probably will be thanking you, too, because my family is in Puerto Rico, but I am in Connecticut, so thank you very much.

THE COURT: Pursuant to the Sentencing Reform Act of 1984, it is the Judgment of the Court that the Defendant Rafael Figueroa is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 100 months.

It is Ordered that the Defendant pay a special assessment of $100 to the Clerk, U.S. District Court, due immediately. I find that the Defendant does not have the ability to pay a fine. Upon release from confinement, the Defendant shall be placed on supervised release for a term of four years. Within 72 hours of release from the custody of the Bureau of Prisons, the Defendant shall report in person to the Probation Office in the district to which the Defendant is released.

While on supervised release, you shall not commit another Federal, state or local crime. You shall comply with the standard conditions adopted by this Court and with the following additional conditions:

First, you shall submit to one drug test within 15 days of

release from confinement and, at least, two drug tests after that. Second, you shall cooperate in the collection of a DNA sample as directed by the Probation Officer.

Now, it is my obligation to inform you that you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there was some basic defect in the proceedings not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly, if you think the sentence is contrary to law.

However, a Defendant may waive those rights as part of a plea agreement, and you have entered into an amended plea agreement that waives some or all of your rights to appeal the sentence itself. Such waivers are generally enforced, but if you believe that your waiver is not enforceable, you can present that theory to an Appellate Court.

With few exceptions, any Notice of Appeal must be filed within 10 days of today. If you are unable to pay the costs of an appeal, you may apply for leave to appeal in forma pauperis, that is an indigent person. If you request, the Clerk of Court will prepare and file a Notice of Appeal on your behalf.

The sentence I have imposed is below the advisory guideline range. I have done so, pursuant to a plea agreement entered into by the Government and the Defendant that calls for this specific sentence. It's a binding plea agreement for a

1  departure that has been accepted by the Court. I find that the
2  sentence is reasonable, having considered all the circumstances
3  and the considerations set forth in the sentencing statute, I
4  find it to be a reasonable sentence, as I said, and not greater
5  than necessary to meet the objectives of our sentencing laws.
6  Anything else?
7       MR. LATELLA: No, Your Honor, thank you.
8       MR. GURGANUS: Your Honor, we would move for the dismissal
9  of Counts 3 and 5 and request that that dismissal be reflected
10 in the Judgment and Commitment Order.
11      THE COURT: Government's motion is granted. Good luck to
12 you.
13      THE INTERPRETER: Thank you, Judge.
14      (At this time the proceedings were adjourned.)
15
16
17
18
19
20
21
22
23
24
25

1              C E R T I F I C A T E

2

3        I, KRISTIN L. YEAGER, Official Court Reporter for the

4  United States District Court for the Middle District of

5  Pennsylvania, appointed pursuant to the provisions of

6  Title 28, United States Code, Section 753, do hereby certify

7  that the foregoing is a true and correct transcript of the

8  within-mentioned proceedings had in the above-mentioned and

9  numbered cause on the date or dates hereinbefore set forth; and

10 I do further certify that the foregoing transcript has

11 been prepared by me or under my supervision.

12

13                         S/Kristin L. Yeager
                           KRISTIN L. YEAGER, RMR,CRR
14                         Official Court Reporter

15
   REPORTED BY:
16
       KRISTIN L. YEAGER, RMR,CRR
17     Official Court Reporter
       United States District Court
18     Middle District of Pennsylvania
       P.O. Box 5
19     Scranton, Pennsylvania  18501

20

21

22        (The foregoing certificate of this transcript
   does not apply to any reproduction of the same by any means
23 unless under the direct control and/or supervision of the
   certifying reporter.)
24

25